Woehrel v State of New York (2019 NY Slip Op 08747)





Woehrel v State of New York


2019 NY Slip Op 08747


Decided on December 5, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 5, 2019

527358

[*1]Andrew C. Woehrel, Respondent,
v
State of New York, Appellant.

Calendar Date: October 9, 2019

Before: Garry, P.J., Mulvey, Devine and Aarons, JJ.


Letitia James, Attorney General, Albany (Owen Demuth of counsel), for appellant.
Alfred Paniccia Jr., Binghamton, for respondent.


Devine, J.
Appeals (1) from an order of the Court of Claims (Schaewe, J.), entered October 19, 2015, which, among other things, denied defendant's motion for partial summary judgment, (2) from two decisions of said court, entered June 20, 2016 and August 18, 2017, in favor of claimant, and (3) from the judgment entered thereon.
Claimant is the owner of three contiguous parcels that abut or lie near State Route 17 in the Town of Ashland, Chemung County and that, for some or all of his ownership, contained a motel and campground (hereinafter the motel property), a house with outbuildings (hereinafter the house property) and a log home. In 1999, defendant appropriated the frontage along State Route 17 in that area and closed off direct access to the road. Claimant, the then-owners of the house property and other nearby landowners received compensation for that taking. Claimant accessed his parcels via a private roadway, located along a utility right-of-way, that crossed an adjoining parcel (hereinafter the Coldiron property).
In 2009, defendant appropriated, among other things, portions of the motel property and the house property with structures on them. Claimant initiated this action to recover damages resulting from the appropriation. Defendant moved for partial summary judgment, asserting that claimant had no legal right to cross the Coldiron property and that the inaccessibility of his parcels would reduce the amount of his damages. In an order entered in October 2015, the Court of Claims discerned questions of fact as to whether claimant had an easement by prescription and denied the motion. Following a bench trial on the access issue, the Court of Claims issued a June 2016 decision finding that claimant had a prescriptive easement over the Coldiron property and that defendant was equitably estopped from arguing to the contrary. The Court of Claims then conducted a bench trial on the issue of damages and, in August 2017, issued a decision awarding claimant $319,400. A judgment was thereafter entered and defendant appeals.[FN1]
It is debatable whether there are "exceptional circumstances" present in this case that would warrant equitably estopping defendant from contesting claimant's right to cross the Coldiron property (Incorporated Vil. of Babylon v Anthony's Water Cafe, 137 AD2d 792, 794 [1988], appeal dismissed 72 NY2d 951 [1988], lv denied 73 NY2d 703 [1988]; see Matter of E.F.S. Ventures Corp. v Foster, 71 NY2d 359, 369-370 [1988]; Matter of Danial v Town of Delhi, 185 AD2d 500, 503 [1992], lv denied 81 NY2d 706 [1993]). The question is academic, however, as our independent review of the trial evidence, with appropriate deference given to the credibility assessments and factual determinations of the Court of Claims, satisfies us that claimant does have a prescriptive easement over the Coldiron property (see JPMorgan Chase Bank N.A. v Futterman, 173 AD3d 1496, 1497 [2019]; Auswin Realty Corp. v Klondike Ventures, Inc., 163 AD3d 1107, 1109 [2018]). "To establish the existence of a prescriptive easement, [claimant] was required to show, by clear and convincing evidence, that the use of the easement was open, notorious, hostile and continuous for a period of 10 years" (Rensselaer Polytechnic Inst. v Schubert, 170 AD3d 1307, 1310 [2019] [internal quotation marks and citations omitted]; see Koziatek v SJB Dev. Inc., 172 AD3d 1486, 1487 [2019]). Claimant was not required to further show that his use of the private roadway was exclusive but, to the extent that the area was open to the public and used as a parking lot during the prescriptive period, he was obliged to distinguish his use of the private roadway from that of the general public (see Nixon v Morris, 91 AD3d 1170, 1172 [2012]).
The trial evidence includes a 1998 photograph that arguably shows the private roadway, as well as a 1997 document in which the then-owners of the house property granted claimant the right to use what they described as an easement over the Coldiron property. Claimant further testified that he, his guests and his customers used the private roadway on a continuous basis from the 1980s onward. The use was open and notorious, with claimant documenting how he made improvements to the private roadway and installed signage identifying it as the entrance to the motel property (see Rensselaer Polytechnic Inst. v Schubert, 170 AD3d at 1310). Hostility and the distinct nature of claimant's use was reflected by those improvements, claimant's testimony that he had no permission from the owner of the Coldiron property to use the road and affidavits from officers of the Coldiron property's corporate owner who agreed and stated that his use would have been stopped had they known of it (see Rosenzweig v Howlan, 166 AD3d 1146, 1148-1149 [2018]; Gorman v Hess, 301 AD2d 683, 684-685 [2003]).[FN2] Defendant suggested that the private roadway did not exist before 1999 and that claimant's testimony undermined his claims of adverse and hostile use. According deference to the credibility determinations and factual findings of the Court of Claims, however, its finding that claimant proved by clear and convincing evidence that he has a prescriptive easement over the private roadway on the Coldiron property was justified (see Auswin Realty Corp. v Klondike Ventures, Inc., 163 AD3d at 1109-1110; Rosenzweig v Howlan, 166 AD3d at 1148-1149; Led Duke v Sommer, 205 AD2d 1009, 1010-1011 [1994]).
Next, inasmuch as this case involves " a partial taking of real property, [claimant] is not only entitled to the value of the land taken — i.e., direct damages — but also to consequential damages, which consist of the diminution in value of [claimant's] remaining land as a result of the taking or the use of the property taken" (Matter of State of New York [KKS Props., LLC], 119 AD3d 1033, 1034 [2014]; see Matter of Eagle Cr. Land Resources, LLC [Woodstone Lake Dev., LLC], 149 AD3d 1324, 1326 [2017], lv denied 29 NY3d 916 [2017]; Coldiron Fuel Ctr., Ltd. v State of New York, 8 AD3d 779, 780 [2004]). In determining the amount of damages, "the findings must either be within the range of the expert testimony, or be supported by other evidence and adequately explained by the court" (Matter of State of New York [KKS Props., LLC], 119 AD3d at 1037 [internal quotation marks, brackets and citation omitted]; see Matter of City of New York [Reiss], 55 NY2d 885, 886 [1982]). Defendant asserts that they were not, but we do not agree.
The Court of Claims rejected the conclusions of claimant's appraiser with regard to his valuation of the house property and the motel property under the income capitalization approach (see Pedersen v State of New York, 50 AD2d 1004, 1004 [1975], lv denied 39 NY2d 707 [1976]), as well as his valuation of the motel property under the sales comparison approach, but it took his data and remaining valuations into account. The Court of Claims also found the analysis of defendant's appraiser to be undercut by his testimony and otherwise flawed in numerous respects, resulting in the court making adjustments to the figures underlying the appraiser's estimates of value, all of which the court explained in depth and some of which it connected to the data provided by claimant's appraiser. Thus, although the Court of Claims awarded a higher amount of damages than that advocated for by defendant's appraiser, the reasons for that departure were set forth, and we cannot say that they were "predicated solely and simply on the subjective judgment of" the court or that there was no "evidence in the record to support" them (Matter of City of New York [Oceanview Terrace], 42 NY2d 948, 949 [1977]; see Matter of Rocky Point Realty, LLC v Town of Brookhaven, 126 AD3d 706, 708 [2015]; Kupersmith v State of New York, 40 AD2d 738, 739 [1972]).
In view of the foregoing, we need not address claimant's alternative grounds for affirmance.
Garry, P.J., Mulvey and Aarons, JJ., concur.
ORDERED that the appeals from the order and decisions are dismissed, without costs.
ORDERED that the judgment is affirmed, with costs.



Footnotes

Footnote 1: The notice of appeal references not only the final judgment, but also the October 2015 order and the June 2016 and August 2017 decisions. Defendant's right to appeal from the October 2015 order terminated upon entry of the final judgment, and the decisions are not appealable papers (see Partridge v State of New York, 173 AD3d 86, 90 n 1 [2019]; Rosenheck v Schachter, 166 AD3d 1354, 1354 n 1 [2018], lv denied 32 NY3d 919 [2019]). The appeal from the judgment brings up for review both the order and the decisions (see id.).

Footnote 2: The affidavits of the corporate officers formed part of defendant's motion for partial summary judgment and were properly considered by the Court of Claims (see Matter of Lewis v Cross, 72 AD3d 1228, 1230 [2010]; Musick v 330 Wythe Ave. Assoc., LLC, 41 AD3d 675, 676 [2007]). Further, although claimant had obtained permission from the holder of the utility easement to use the private roadway, "only seeking permission for use from the record owner negates hostility" (Led Duke v Sommer, 205 AD2d 1009, 1011 [1994] [internal quotation marks, brackets, emphasis and citation omitted]).